UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                  :

DAVE'S SPECIALTY IMPORTS, INC.,    :
                                  :

                  Plaintiff,    :

                                  :

       -against-    :

                                    :

PRODUCE FOR LESS, INC., and    :
ALEKSANDR GAVRILOV a/k/a    :
ALEXANDER GAVRILOV,    :
                                    :

                  Defendants.    :

------------------------------------------------------ X

**REPORT AND
RECOMMENDATION**
1:19-CV-7136 (LDH)(PK)

**Peggy Kuo, United States Magistrate Judge:**

On December 20, 2019, Plaintiff Dave's Specialty Imports, Inc., brought this action against Defendants Produce for Less, Inc. ("PFL") and Aleksandr Gavrilov. (Compl., Dkt. 1.) Plaintiff alleges that Defendants violated the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499a, *et seq.* ("PACA"), by failing to hold the perishable agricultural commodities they purchased, as well as any proceeds from the sale of those commodities, in a trust for Plaintiff's benefit until Defendants made payment in full.[1] *See* 7 U.S.C. § 499e(c)(2).

Before the undersigned on referral from the Honorable LaShann DeArcy Hall is Plaintiff's Motion for Default Judgment ("Motion," Dkt. 30). For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED.

---

[1] As explained below, Plaintiff asserted additional claims in the Complaint that it elected not to pursue in the instant motion.

## FACTUAL BACKGROUND

Unless otherwise stated, the following facts are taken from the Complaint and accepted as true for the purposes of the Motion.

Plaintiff is a Florida corporation engaged in the business of selling wholesale quantities of perishable agricultural commodities through interstate commerce. (Compl. ¶ 3.) It holds valid PACA License number 19921475 in good and active standing. (*Id.*) PFL, a New York corporation based in Brooklyn, acted as a dealer and commission merchant of perishable agricultural commodities through interstate commerce in New York. (*Id.* ¶ 4.) It holds or held valid PACA License number 20180568. (*Id.*) Gavrilov was a responsible owner, shareholder, partner, officer and/or director of PFL, and person in control of, and responsible for, the day-to-day operations of PFL, and for the disposition of PFL's PACA trust assets. (*Id.* ¶ 5.) He managed, controlled and directed the purchase of perishable commodities. (*Id.* ¶ 27.)

At Defendants' request, Plaintiff sold blueberries on credit to PFL on three dates. (*Id.* ¶ 7.) On November 7, 2019, Defendants ordered and Plaintiff shipped 2,956 units of blueberries originating in Chile to PFL, with an invoice dated November 11, 2019 showing payment due of $45,843.00. (Compl. Ex. A at 3, 7, Dkt. 1-4.) On November 13, 2019, Defendants ordered and Plaintiff shipped 2,400 units of blueberries originating in Argentina to PFL, with an invoice dated November 15, 2019 showing payment due of $69,600.00. (*Id.* at 4, 9.) On November 19, 2019, Defendants ordered and on November 20, 2019, Plaintiff shipped 2,520 units of blueberries originating in Argentina and Chile to PFL, with an invoice dated November 22, 2019 showing payment due of $47,910.00. (*Id.* at 5, 11.) Payment was required within 15 days of the invoice date, as stated on each invoice: "Sales Terms: Net 15 Days." (*Id.* at 3-5.)

The invoices also contain the following notice regarding a trust claim:

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities

Act, 1930 (7 USC 499(e)(c)).  The seller of these commodities retains trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. NOTICE: Past due invoices shall accrue interest at the rate of 2 % or at the maximum legal rate, whichever is lower.  Seller shall be entitled to collect reasonable attorney's fees and expenses as part of an action to collect this invoice.  Actual attorney's fees incurred in bringing action to collect on this invoice and/or enforcing any judgment granted and interest shall be considered as additional sums owed in connection with this action.

("Trust Notice," Compl. Ex. A.)

Plaintiff delivered the blueberries to Defendants, who received and accepted them from Plaintiff.  (Compl. ¶¶ 8, 9.)  Despite Plaintiff's demand, Defendants have failed and refused to pay for the commodities they ordered, received, and accepted from Plaintiff.  (*Id.* ¶ 12.)  Instead, "Defendants have dissipated and are continuing to dissipate the *corpus* of the statutory trust that arose in favor of Plaintiff and grew upon each delivery to All Defendants of perishable agricultural commodities." (*Id.* ¶ 15.)

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on December 20, 2019 (Dkt. 1), asserting six causes of action: (1) failure to maintain trust (*id.* ¶¶ 6-17); (2) dissipation of trust assets (*id.* ¶¶ 18-22); (3) failure to pay trust funds and unfair conduct, pursuant to 7 U.S.C. § 499b (*id.* ¶¶ 23-25); (4) breach of fiduciary duty and non-dischargeability, pursuant to 11 U.S.C. § 523(a)(4) (*id.* ¶¶ 26-30); (5) action on account and breach of contract (*id.* ¶¶ 31-35); and (6) interest and attorneys' fees (*id.* ¶¶ 36-41).[2]  On December 20, 2019, Plaintiff also sought a temporary restraining order requiring Defendants to maintain the PACA trust, which was granted on December 30, 2019.  (Dkt. 8.)

On January 2, 2020, Plaintiff filed a Declaration of Service stating that it served, *inter alia*, copies of the Summons, Complaint, and temporary restraining order on Defendants on December

---

[2] Plaintiff asserts the third and fifth causes of action against PFL only.  The other four causes of action are asserted against both Defendants.

30, 2019 via Federal Express. (Dkt. 10.) Because service by Federal Express does not comply with the Federal Rules of Civil Procedure, on January 10, 2020, Plaintiff was ordered to re-serve Defendants. (Jan. 10, 2020 Dkt. Order.) Plaintiff re-served both Defendants on January 14, 2020. (Dkts. 15, 16.)

Plaintiff requested a certificate of default for both Defendants on February 28, 2020 (Dkt. 28), which was entered by the Clerk of Court on March 5, 2020 (Dkt. 29). Plaintiff filed the Motion on March 6, 2020. (Dkt. 30.) In the Motion, Plaintiff seeks a default judgment on one cause of action against Defendants: failure to maintain trust assets in violation of 7 U.S.C. § 499e(c). (Pl.'s Mem. in Supp. of Mot. for Default J. Against All Defs., "Mem.," Dkt. 31 at 2.)

On February 22, 2021, Plaintiff was directed to supply certain supplemental information in support of the Motion, which Plaintiff provided on March 1, 2021. (*See* Pl.'s Suppl. Mem. in Supp. of Mot. for Default J. Against All Defs., "Suppl. Mem.," Dkt. 41.)

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process regarding default judgment. First, the Clerk of the Court enters a party's default when a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Guideone Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Before a court grants a motion for default judgment, the court may, but is not required to, adjudicate personal jurisdiction. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (leaving "open the question whether a district court *must* investigate its personal jurisdiction over a defendant before entering a default judgment" (quotation, citation, and alteration omitted)); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)

4

("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").

Additionally, the Court must ensure that (1) the plaintiff took all the required procedural steps in moving for default judgment pursuant to Local Civil Rule 55.2(c), and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the court draws all reasonable inferences in favor of the plaintiff. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, a default is "not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. Instead, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See id*; *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

## ANALYSIS

### I.    Procedural Compliance

To establish entitlement to default judgment, a plaintiff must demonstrate proper service of the summons and complaint. *Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 9-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiff personally served Gavrilov with a copy of the Summons and Complaint. (Dkt. 15.) This is proper service under Federal Rule of Civil Procedure 4(e)(2)(A). Plaintiff served PFL by delivering a copy of the Summons and Complaint to Gavrilov, who is authorized by appointment or law to receive process, at PFL's usual place of business. (Dkt. 16.) This is proper service upon a corporation in New York. N.Y. C.P.L.R. § 311(a)(1) (permitting service upon a corporation by delivering the summons "to any other agent authorized by

appointment or by law to receive service"); Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Thus, Plaintiff properly served Defendants.

As part of its Motion, Plaintiff included a memorandum of law (Dkt. 31; Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default for Defendants (Aff. of Ryan M. Gembala, Esq. in Supp. of Pl.'s Mot. for Default J., "Gembala Aff.," Dkt. 30-1, Ex. A; Local Civ. R. 55.2(b)(1)), proposed judgment (Dkt. 30-2; Local Civ. R. 55.2(b)(3)), and a notice of motion (Dkt. 30; Local Civ. R. 7.1(a)(1)). Plaintiff also submitted proof of mailing of the Motion to Defendants. (Dkt. 30 at 2, Dkt. 31 at 10; Local Civ. R. 55.2(c)).

The Local Civil Rules require a party seeking a default judgment also to include with the default judgment motion a copy of the claim and proof of service of the claim (Local Civ. R. 55.1(b)(3), 55.2(b)(2)), and a statement that the individual defendant was not on active military duty (Local Civ. R. 55.1(b)(1)). Plaintiff did not include these documents. However, the undersigned excuses Plaintiff's failure to comply with these requirements. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."). Plaintiff filed proof that it served a copy of the Complaint on Defendants on January 17, 2020 (Dkts. 15, 16), and in its request for a certificate of default, filed only a week before the Motion, Plaintiff stated under penalty of perjury that "Defendants are not infants or incompetents" and "are not presently in the military service of the United States." (Dkt. 28-1 ¶ 5.)

Accordingly, Plaintiff has complied with the procedural requirements for default judgment.

## II. Subject Matter Jurisdiction

Jurisdiction over Plaintiff's PACA claim is proper pursuant to 28 U.S.C. § 1331.

## III. Liability

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce." *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir. 2004). In 1984,

6

Congress added § 499e(c) to help protect the sellers of perishable agricultural commodities. *Id.* at 37. Congress found that these "sellers needed greater protection" because they "were typically required to sell their produce quickly and frequently found themselves in the position of unsecured creditors of buyers whose creditworthiness could not be verified." *Id.* "If buyers defaulted, sellers could look only to the commodities (which would have perished) or to the sales proceeds of the commodities." *Id.* However, the sellers "were often unable to collect monies owed to them" because they were "typically unsecured creditors" who lacked priority against secured creditors such as banks. *Id.*

Congress designed § 499e(c) to address this problem by "requir[ing] licensed dealers to hold all perishable commodities on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers." *Id.* In so doing, Congress made "the sellers' interests in the commodities and sales proceeds superior to those of the buyers' [other] creditors." *Id.*

In relevant part, § 499e(c)(2) states:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

Congress also created a private right of action pursuant to which a trust beneficiary could enforce payments from a trust. *See id.* § 499e(c)(5). "To recover the proceeds from a PACA created trust, a plaintiff must demonstrate: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to

7

the purchaser within the time provided by the law." *A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C. § 499e).

The undersigned first considers whether Plaintiff satisfied each of these five elements against PFL and then turns to whether Gavrilov is also liable for PFL's violation of § 499e(c).

### A.    *Whether PFL is Liable*

#### 1.    Plaintiff Sold PFL Perishable Agricultural Commodities

PACA defines a "perishable agricultural commodity" as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A).  In November 2019, Plaintiff sold blueberries to PFL.  (Compl. ¶¶ 7-9; *see also id.* Ex. A at 3-5.)  Because blueberries are perishable agricultural commodities, the first element is satisfied.  *See Or. Potato Co. v. Seven Stars Fruit Co.*, No. C12-0931 (JLR), 2013 WL 230984, at *5 (W.D. Wash. Jan. 22, 2013) (finding on a motion for summary judgment that blueberries "constitute 'perishable agricultural commodities' under PACA" (footnote omitted)).

#### 2.    PFL Was a Commission Merchant, Dealer, or Broker

Under the second element of a PACA trust claim, a plaintiff must establish that the defendant is a commission merchant, dealer, or broker.  *See A & J Produce Corp.*, 385 F. Supp. 2d at 358.  Here Plaintiff alleges that PFL "holds/held valid PACA License number 20180568" and that it "acted as a dealer and commission merchant of perishable agricultural commodities."  (Compl. ¶ 4.)

PACA defines a "commission merchant" as "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5).  It defines a "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agriculture], any perishable agricultural commodity in interstate or foreign commerce."  *Id.* § 499a(b)(6).

Plaintiff's allegations are sufficient to meet the second element of a § 499e(c)(2) claim.  *See Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 268 (E.D.N.Y. 2019) ("Because [defendant] was licensed under the provisions of PACA during the relevant time period, [defendant] is a 'dealer' under PACA."); *Mikey's Choice LLC v. Fagos LLC*, No. 8-CV-4492 (RRM)(SMG), 2010 WL 935550, at *1 (E.D.N.Y. Feb. 19, 2010), *R&R adopted*, 2010 WL 934260 (E.D.N.Y. Mar. 12, 2010) (finding that plaintiff's allegation that defendant was a PACA dealer was sufficient on a default judgment motion).

### 3.    The Transactions Occurred in Interstate Commerce

Under PACA, the term "interstate commerce" is defined as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia."  7 U.S.C. § 499a(b)(3).

The blueberries' country of origin was Argentina or Chile.  (Compl. Ex. A.)  Plaintiff sold these blueberries "on credit to PFL in interstate commerce."  (Compl. ¶ 7.)  Therefore, Plaintiff satisfies this element.

### 4.    Plaintiff Has Not Received Full Payment

Plaintiff alleged that Defendants have "failed and refused to pay" for the blueberries (*id.* ¶ 12), and that "pursuant to the contract and payment terms between the parties, All Defendants are in default with respect to the payment of $163,353.00 outstanding to Plaintiff, plus accruing interest and attorneys' fees."  (*Id.* ¶ 10.) Accordingly, this element is satisfied.  *See Double Green Produce, Inc.*, 387 F. Supp. 3d at 269 (finding that analogous allegations satisfied the fourth element of a § 499e(c)(2) claim).

### 5.    Plaintiff Gave Written Notice of Intent to Preserve Trust Rights

PACA provides two ways in which a seller may give written notice of its intent to preserve its trust rights: (1) the seller provides written notice to the dealer within thirty days after payment is due,

*see* 7 U.S.C. § 499e(c)(3); or (2) the seller includes a printed statement on its billing or invoice statements, providing notice of its intent to preserve the trust, *id.* § 499e(c)(4). Each of the three invoices Plaintiff sent to PFL included the Trust Notice (Compl. Ex. A), which is sufficient to preserve Plaintiff's rights under § 499e(c)(4). *See Double Green Produce, Inc.*, 387 F. Supp. 3d at 270 (finding that a substantially similar statement satisfied § 499e(c)(4)).

*    *    *

Accordingly, the undersigned respectfully recommends finding that Plaintiff satisfied the elements required to establish PFL's liability on Plaintiff's PACA trust claim.

### B.    *Whether Gavrilov is Liable*

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007).

Plaintiff alleges that as PFL's "responsible owner, shareholder, partner, officer and/or director," Gavrilov is "in control of, and responsible for, the day to day operations of PFL, and for the disposition of PFL's PACA trust assets, over which he owes statutory fiduciary duties to Plaintiff." (Compl. ¶ 5.) This responsibility included "manag[ing], controll[ing] and direct[ing] the purchase of perishable agricultural commodities on credit." (*Id.* ¶ 27.) As the "individual who was in a position to control trust assets and allow[ ] the assets to dissipate," *S. Katzman Produce, Inc. v. Won*, No. 8-CV-2403 (KAM)(VVP), 2009 WL 2448408, at *4 (E.D.N.Y. Aug. 7, 2009) (citation and quotation omitted), Gavrilov is also liable under PACA.

## IV.    Damages

Plaintiff seeks $163,353.00 in damages, which is the amount Defendants owe for the three shipments of blueberries. Plaintiff also seeks interest at 2% per month. (Gembala Aff. ¶¶ 7, 9.)

### A.    *Unpaid Invoices*

The three invoices that Defendants did not pay are attached as part of Exhibit A to the Complaint.  (*See* Dkt. 1-4.)  Invoices 54959 and 54988 include a "Temperature Recorder Charge" for $25 and $30, respectively.  (*Id.*)

Plaintiff summarized these invoices in a "PACA Trust Chart," which it attached as Exhibit A to the Gembala Affirmation.  (Gembala Aff. ¶ 9; *id.* Ex. A.)  In his Affirmation, Gembala, who is Plaintiff's counsel, states: "The chart was prepared by my office under my direction utilizing documents and information received from Plaintiff and attached to the Complaint.  Accordingly, Exhibit A is hereby authenticated as true and accurate."  (*Id.* ¶ 9.)

Section 499e(c)(2) states that the PACA trust exists "until full payment of the sums owing in connection with such transactions," *i.e.*, transactions involving perishable agricultural commodities, "has been received by such unpaid suppliers, sellers, or agents."  7 U.S.C. § 499e(c)(2).  The phrase "sums owing in connection with," includes those "charges [that] are a necessary part of the produce transaction," such as "[h]andling, pallet, and freight charges."  *Lincoln Diversified, Inc. v. Mangos Plus, Inc.*, No. 98-CV-5593 (RWS), 2000 WL 890198, at *2 (S.D.N.Y. July 5, 2000).  Therefore, the Temperature Recorder Charge may be included in the amount that is owed.

The undersigned reviewed the PACA trust chart and the invoices and confirms that the information set forth in the chart is accurate.  *See G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc.*, No. 15-CV-6174 (NG)(CLP), 2016 WL 5802747, at *6 (E.D.N.Y. Aug. 12, 2016), *R&R adopted*, 2016 WL 5716819 (E.D.N.Y. Sept. 30, 2016) (calculating damages based on the invoice between the parties and a declaration of plaintiff's counsel).

The unpaid invoices are as follows:

| Invoice Number | Invoice Date | Payment Due Date | Invoice Balance |
|---|---|---|---|
| 54959 | November 11, 2019 | November 26, 2019 | $45,843.00 |
| 54978 | November 15, 2019 | November 30, 2019 | $69,600.00 |
| 54988 | November 22, 2019 | December 7, 2019 | $47,910.00 |
| *Total* | | | $163,353.00 |

Accordingly, the undersigned respectfully recommends Plaintiff be awarded $163,353.00 in damages.

### B.    Interest

Plaintiff requests interest at 2% per month, which it calculates to be "$9,459.56 as of February 27, 2020, and $107.41 per day thereafter." (Gembala Aff. ¶ 9.)  Plaintiff measured the interest "from the due date of each unpaid invoice."  (*Id.*)

### 1.    Interest Rate

Although "PACA does not itself establish a right to interest," "the purchaser is required to pay [interest] when the parties' contract so provides."  *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 4-CV-3125 (WHP), 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005).  Courts have the discretion to award prejudgment interest on a PACA claim. *See Frankie Boy Produce Corp. v. Sun Pac. Enters.*, No. 99-CV-10158 (DLC), 2000 WL 1532914, at *3 (S.D.N.Y. Oct 17, 2000).

The Complaint contains two allegations about the interest rate.  First, the Trust Notice states: "Past due invoices shall accrue interest at the rate of 2 % or at the maximum legal rate, whichever is lower."  It is silent as to the time period over which the 2% interest rate applies and the meaning of the phrase "the maximum legal rate."   Second, the PACA trust chart that Plaintiff included in Exhibit A to the Complaint states that the accrued interest rate is calculated at "24.00% annually."

In its briefing, Plaintiff contends that the two percent rate set forth in the Trust Notice means two percent per month.  (Suppl. Mem. at 3-4.)  Plaintiffs explains, "[i]n the PACA context, the contractual interest rates typically vary between 18% and 24% per year" (*id.* at 4 (citing *Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17-CV-3841, 2018 WL 4327923, at *8 (E.D.N.Y. July 9, 2018), *R&R*

*adopted*, 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018))), and Defendants, "[a]s experienced produce dealers," "are no doubt aware" of this range (*id.* (footnote omitted)).  According to Plaintiff, "2% per year would be woefully low" given that "under New York law Plaintiff would be entitled to 9% interest on his unpaid invoices even if there were no interest language at all."  (*Id.* at 3 (citing N.Y. C.P.L.R. § 5001(a), § 5004).)   Finally, Plaintiff claims that the phrase "maximum legal rate" "refers to the maximum interest rate allowed under law on unpaid balances."  In New York, the maximum legal rate is 25% because interest "'exceeding twenty-five per centum per annum' is considered usury."  (*Id.* at 3 (quoting N.Y. Penal Law § 190.40).)

In light of this explanation, and the fact that Defendants have not presented any contrary interpretation of the phrase "2%" as used in the Trust Notice, the undersigned finds that the proper interest rate is two percent per month, or 24% per year.

## 2. Calculating the Prejudgment Interest Owed

Plaintiff measured the interest "from the due date of each unpaid invoice."  (Gembala Aff. ¶ 9.)  The prejudgment interest is calculated in the table below:

| Invoice Number | Payment Due Date | Amount Due | Date Interest Runs From | Interest Rate Per Year | Interest Per Year | Interest Per Day |
|---|---|---|---|---|---|---|
| 54959 | November 26, 2019 | $45,843.00 | November 27, 2019 | 24% | $11,002.32 | $30.14 |
| 54978 | November 30, 2019 | $69,600.00 | December 1, 2019 | 24% | $16,704.00 | $45.76 |
| 54988 | December 7, 2019 | $47,910.00 | December 8, 2019 | 24% | $11,498.40 | $31.50 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded prejudgment interest as follows: $30.14 in interest per day from November 27, 2019 until the date of judgment; $45.76 in interest per day from December 1, 2019 until the date of judgment; and $31.50 in interest per day from December 8, 2019 until the date of judgment.

## V.  Attorneys' Fees and Costs

A seller is entitled to attorneys' fees and costs in an action to enforce a PACA trust "when the parties' contract so provides." *G & P Warehouse, Inc.*, 2016 WL 5802747, at *7 (quotation and citation omitted).  "In the PACA context, courts have understood standard-form provisions contained in invoices to constitute additional terms of the purchase agreement between the parties...." *Tomato Mgmt., Corp. v. CM Produce LLC*, No. 14-CV3522 (JPO), 2014 WL 2893368, at *2 (S.D.N.Y. June 26, 2014) (citation omitted).

> The Trust Notice states:

> Seller shall be entitled to collect reasonable attorney's fees and expenses as part of an action to collect this invoice.  Actual attorney's fees incurred in bringing action to collect on this invoice and/or enforcing any judgment granted and interest shall be considered as additional sums owed in connection with this action.

Based on this express contractual provision, Plaintiff is entitled to reasonable attorneys' fees and expenses.  Plaintiff seeks $18,285.00 in attorneys' fees and $2,971.95 in expenses.  (Gembala Aff. ¶ 10.)

### A.  Attorneys' Fees

"The court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award." *Zuffa, LLC v. South Beach Saloon, Inc.*, No. 15-CV-6355 (ADS)(AKT), 2019 WL 1322620, at *6 (E.D.N.Y. Mar. 6, 2019), *R&R adopted*, 2019 WL 1317568 (E.D.N.Y. Mar. 22, 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  "Requests for attorney's fees must be accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Innovative Sports Mktg., Inc. v. Aquarius Fuente de*

*Soda, Inc.*, No. 7-CV-2561 (ENV)(CLP), 2009 WL 3173968, at *11 (E.D.N.Y. Sept. 30, 2009) (quotation and citation omitted).

Plaintiff seeks attorneys' fees for the work performed by two partners (Ryan Gembala and Matthew Dooley), two associates (Michael Briach and Stephen Boska), and two paralegals (Laura Stacy and Audrey Tedor). (Gembala Aff. Ex. B.) Plaintiff's counsel is located in Ohio. (Suppl. Mem. at 7.)

### 1.     Reasonable Hourly Rate

A reasonable hourly rate is determined through the application of the forum rule, which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). The burden is on the fee applicant to establish the reasonableness of the hourly rate sought. *See Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *5 (E.D.N.Y. Apr. 2, 2020).

"The prevailing rates for attorneys in the E.D.N.Y. are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Id.* (quotations, citations, and alterations omitted).

Plaintiff proposes that the reasonable hourly rate for Gembala and Dooley is $325. (Suppl. Mem. at 6.) In support of this proposal, Plaintiff states that both partners "have been practicing law in excess of 15 years" and "[b]oth have extensive federal practices and admission in multiple federal district courts." (*Id.* at 5.) The undersigned finds that $325 is a reasonable hourly rate.

Plaintiff proposes that the reasonable hourly rate for Briach and Boska is $250. In support of this request, Plaintiff only states that this rate "is within the associate rates set forth in" cases in this district. (*Id.* at 6.) Plaintiff has not satisfied its burden to justify the proposed hourly rate for Briach and Boska. Accordingly, the undersigned finds that the proper hourly rate should be $100, which is the bottom of the associate range. *See Chawla v. Metro. Oral Surgery Assocs., P.C.*, No. 11-CV-6248

(RRM)(VMS), 2014 WL 4678023, at * 11 (E.D.N.Y. Sept. 19, 2014) (setting the hourly rate of a biller "at the bottom end of the range" when the fee applicant provided no "background-and-experience information").

Plaintiff initially sought $150 per hour for the work performed by Stacy and Tedor. However, Plaintiff lowered the rate sought to $85 in its supplemental filing. (Suppl. Mem. at 6.) Although Plaintiff fails to provide any information to justify this rate, the undersigned finds that it is reasonable because Plaintiff voluntarily lowered it to a rate to the midpoint of the range of rates typically awarded by courts in this district. *See Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals").

## 2. <u>Reasonableness of Time Billed</u>

In addition to evaluating the reasonableness of the hourly rate sought, the court must also consider whether the "number of hours for which compensation is sought is reasonable." *Monge*, 2020 WL 1666460, at *7 (quotation and citation omitted). The fee applicant bears the burden to show that the hours spent are not "excessive, redundant, or otherwise unnecessary." *Id.* (quotation and citation omitted). If a fee application has "such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation and citation omitted).

Gembala and Dooley billed their travel time, including flying from Ohio to New York, at their full hourly rates. (*See, e.g.*, Gembala Aff. Ex. C, Jan. 10, 27, 2020 entries.) Travel time is typically reimbursed at 50% of an attorney's reasonable hourly rate, not at the full hourly rate. *See Singh v. Zoria Housing LLC*, No. 16-CV-2901 (SJ)(RER), 2017 WL 6947717, at *4 (E.D.N.Y. Nov. 17, 2017), *R&R adopted*, 2018 WL 437492 (E.D.N.Y. Jan. 16, 2018).

16

In addition, many of the entries are "block billed" (*see, e.g.*, Gembala Aff. Ex. C, Decl. 11, 31, 2019 entries), which "renders it difficult to determine whether, and/or the extent to which, the work done by the attorneys is duplicative or unnecessary." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *14 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (quotation, citation, and alteration omitted).

Moreover, as Plaintiff itself admits, the vast majority of the work was done by Gembala and Dooley (*see* Suppl. Mem. at 5), even though much of that work could have been performed by an associate with a lower hourly rate. *See Callari*, 2020 WL 2771008, at *13 (finding that "a reduction in fees" is "warrant[ed]" when a senior attorney conducted work "that could have been handled by an associate under his supervision" (citations omitted)).

Accordingly, the undersigned respectfully recommends that Plaintiff's fees request be reduced by twenty percent to account for the excessive billing. *See Crews v. Cty. of Nassau*, No. 6-CV-2610 (JFB)(GRB), 2019 WL 6894469, at *11-12 (E.D.N.Y. Dec. 18, 2019) ("conclud[ing] that a 20% percent [sic] across-the-board reduction to [counsel's] hours is warranted" because of excessive, redundant, and vague hours).

### 3. Calculating the Fee Award

The chart below sets forth the fees for Plaintiff's attorneys and paralegals calculated using the reasonable hourly rates without any reduction in hours.

| Biller | Requested Rate | Adjusted Rate | Hours Sought | Adjusted Rate x Hours |
|---|---|---|---|---|
| Matthew Dooley | $325.00 | $325.00 | 13.2 | $4,290.00 |
| Ryan Gembala | $325.00 | $325.00 | 33 | $10,725.00 |
| Stephen Bosak | $250.00 | $100.00 | 0.6 | $60.00 |
| Michael Briarch | $250.00 | $100.00 | 6.3 | $630.00 |
| Laura Stacy | $85.00 | $85.00 | 11.8 | $1,003.00 |
| Audrey Tedor | $85.00 | $85.00 | 1 | $85.00 |
| *Total* | | | | *$16,793.00* |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $13,434.40 in attorneys' fees.

### B.    Costs

Pursuant to the terms of the Trust Notice, Plaintiff may only be awarded those expenses that are "reasonable." *See also Dayoub Mktg., Inc.*, 2005 WL 3006032, at *5 (holding that although the invoices "impose[d] liability on the buyer for all of [plaintiff's] 'costs and expenses of collection,' without limitation," plaintiff was "entitled only to its reasonable collection costs").

In the Gembala Affirmation, Plaintiff states that it is seeking costs of $2,971.95. (Gembala Aff. ¶ 10.) Because Plaintiff initially failed to provide details or invoices for those costs, the Court directed Plaintiff to supplement its request with legal and documentary support. (Feb. 22, 2021 Order.) In response, Plaintiff filed the Supplemental Memorandum and the Declaration of Ryan M. Gembala, Esq. Pursuant to 28 U.S.C. § 1746 in Support of Plaintiff's Supplemental Memorandum in Support of Default Judgment ("Gembala Suppl. Decl.," Dkt. 41-2), which attached documentation (original receipts, or where those could not be located, credit card statements and invoices) for Plaintiff's expenses (Gembala Suppl. Decl. ¶ 8).

Although Plaintiff's invoices and credit card statements are difficult to decipher due to extensive redactions, Plaintiff appears to seek reimbursement for a total of $2,956.44 in costs (*see* Gembala Suppl. Decl. Ex A), not $2,971.95 as stated in the earlier Gembala Affirmation.[3]

Based on the materials included in Exhibit A to the Gembala Supplemental Declaration, Plaintiff seeks an award of the following costs:

---

[3] In the Supplemental Memorandum, Plaintiff states that it is "reduc[ing] its request to recover expenses by $40.51, from $1,976.38 to $1,935.87" because some of the charges included in the documentation Plaintiff provided to support its costs were inaccurate. (Suppl. Mem. at 8.) Plaintiff does not state where the $1,976.38 came from or why it changed from $2,971.95. In addition, some of the charges Plaintiff claims are inaccurate, such as a parking fee from January 26, 2020, are not included in the receipts Plaintiff submitted. Accordingly, the undersigned will only consider those costs included in Exhibit A to the Gembala Supplemental Declaration.

| Expense | Date | Amount |
|---|---|---|
| Westlaw | December 2019 | $48.92 |
| Filing Fee | December 20, 2019 | $400.00 |
| Court Fee | December 20, 2019 | $150.00 |
| FedEx (to the Court) | December 26, 2019 | $31.35 |
| FedEx (to Gavrilov) | December 30, 2019 | $49.20 |
| FedEx (to PFL) | December 30, 2019 | $44.20 |
| Westlaw | January 2020 | $90.45 |
| Airfare | January 3, 2020 | $806.80 |
| Airfare | January 3, 2020 | $29.00 |
| Airfare | January 3, 2020 | $29.00 |
| Court Fee | January 6, 2020 | $150.00 |
| Brooklyn Bridge Bistro | January 10, 2020 | $23.19 |
| Uber | January 11, 2020 | $66.55 |
| Uber | January 11, 2020 | $66.80 |
| Borowide Legal | January 14, 2020 | $156.20 |
| Airfare | January 14, 2020 | $630.60 |
| Paygov | January 22, 2020 | $25.00 |
| Uber | January 27, 2020 | $52.61 |
| Bayway Courthouse | January 27, 2020 | $1.91 |
| Irving Farm Coffee | January 27, 2020 | $4.36 |
| Hotel | January 27, 2020 | $44.02 |
| Uber | January 28, 2020 | $36.28 |
| Parking | January 28, 2020 | $20.00 |
| *Total* | | *$2,956.44* |

Most of the costs sought stem from Plaintiff's selection of out-of-state counsel to prosecute this lawsuit. When a plaintiff seeks costs associated with out-of-state counsel, the plaintiff has the burden to explain the need for such counsel. *See Motorola, Inc. v. Abeckaser*, No. 7-CV-3963 (CPS), 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009), *R&R adopted in relevant part*, 2009 WL 2568526 (E.D.N.Y. Aug. 19, 2009). In support of its request for travel expenses, Plaintiff states, "while Plaintiff operates out of Florida, its principal resides in Ohio, where Plaintiff's counsel is located." (Suppl. Mem. at 7.) Plaintiff also argues that its counsel's practice "is focused on the produce and agriculture industries, including claims arising under [PACA] and the federal regulations promulgated thereunder, a unique area of federal law." (*Id.* at 5.) While a party's residence outside New York does not always support the selection of out-of-state counsel, the expertise in agricultural law described by Plaintiff

provides a sufficient basis for retaining counsel outside the metropolitan New York area. *But see Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 7-CV-3760, 2010 WL 3852003, at \*3 (E.D.N.Y. Sept. 27, 2010) (defendants "should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms'" (quoting *Simmons*, 575 F.3d at 175) (alteration omitted)).

Accordingly, the undersigned finds that Plaintiff is entitled to an award of travel-related costs, such as airfare and ground transportation. Such compensable costs do not include parking fees, when the mode of local transportation appears to be a car service such as Uber. They also not include meals, especially when counsel seeks reimbursement for every cup of coffee.

As for other costs, Plaintiff seeks $93.40 for serving Defendants by FedEx. However, Plaintiff was not granted leave to serve Defendants by means other than the Federal Rules. (*See* Jan. 10, 2020 Dkt. Order.) Accordingly, the undersigned finds that it is not entitled to recover this cost.

Plaintiff requests reimbursement for "Borowide Legal" in the amount of $156.20 and "Paygov" in the amount of $25.00. However, the undersigned cannot evaluate the reasonableness of these costs because Plaintiff has not provided an explanation for them. Thus, the undersigned finds that Plaintiff is not entitled to an award for these costs. *See Lee v. Santiago*, No. 12-CV-2558 (PAE)(DF), 2013 WL 4830951, at \*5 (S.D.N.Y. Sept. 10, 2013) ("A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation.").

Although Plaintiff requests reimbursement for Westlaw charges in the amount of $139.37, "online legal research . . . charges are generally considered overhead and are not reimbursable." *Markey v. Lapolla Indus., Inc.*, No. 12-CV-4622 (JS)(AKT), 2017 WL 9512407, at \*9 (E.D.N.Y. Aug. 24, 2017), *R&R adopted*, 2017 WL 42171560 (E.D.N.Y. Sept. 26, 2017).

The remainder of Plaintiff's charges are for Court filing fees and sending materials to the Court via FedEx, which are recoverable. *See Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2019 WL 624603, at *7 (S.D.N.Y. Feb. 14, 2019); *Levy v. Powell*, No. 00-CV-4499 (SJF), 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded costs in the amount of $2,493.01.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be granted. The undersigned further respectfully recommends that Plaintiff be awarded $163,353 in damages, $13,434.40 in attorneys' fees, and $2,493.01 in costs. Finally, the undersigned respectfully recommends that Plaintiff be awarded prejudgment interest as follows: $30.14 in interest per day from November 27, 2019 until the date of judgment; $45.76 in interest per day from December 1, 2019 until the date of judgment; and $31.50 in interest per day from December 8, 2019 until the date of judgment.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service no later than March 15, 2021. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
            March 12, 2021