UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------- X
                          :

DAVE'S SPECIALTY IMPORTS, INC.,   :
                          :

              Plaintiff,    :

    -against-             :

PRODUCE FOR LESS, INC., and     :
ALEKSANDR GAVRILOV a/k/a    :
ALEXANDER GAVRILOV,        :

              Defendants.    :

------------------------------------------------- X

**REPORT AND**
**RECOMMENDATION**
1:19-CV-7136 (LDH)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Avocavi Produce, LLC ("Avocavi"), FR Fresh Produce, LLC ("FR Fresh"), and NS Brands Ltd. ("NSB," together "Intervenors"), filed an Intervenor Complaint alleging that Defendants Produce for Less, Inc. ("PFL") and Aleksandr Gavrilov ("Gavrilov", together with PFL, "Defendants") violated the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499a, *et seq.* ("PACA"), by failing to hold the perishable agricultural commodities they purchased, as well as any proceeds from the sale of those commodities, in a trust for Intervenors' benefit until Defendants made payment in full. *See* 7 U.S.C. § 499e(c)(2). (Intervenor Compl., Dkt. 20.)

Before the undersigned on referral from the Honorable Judge LaShann DeArcy Hall is Intervenors' Motion for Default Judgment ("Motion," Dkt. 35). For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED.

## FACTUAL BACKGROUND

Unless otherwise stated, the following facts are taken from the Intervenor Complaint (Dkt. 20) and accepted as true for purposes of the Motion.

Intervenors are three Texas corporations "engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities [ ] in interstate commerce." (Intervenor Compl. ¶¶ 1-2.)  PFL is a New York Corporation with its principal place of business in Brooklyn.  (*Id.* ¶ 3(a).)  Intervenors allege that PFL "is a 'dealer' of [p]roduce as defined by PACA" because it "was engaged, directly or indirectly, in the business of purchasing and/or selling [p]roduce in wholesale or jobbing quantities" (*id.* ¶ 4), and "a 'commission merchant' as defined by the PACA" because it "was engaged in the business, directly or indirectly, of receiving in interstate or foreign commerce [p]roduce for sale, on commission, or for or on behalf of another," including Intervenors.  (*Id.* ¶ 5.)

Gavrilov, who is a resident of Brooklyn, New York, "is the owner and Principal of Produce for Less" and, as such, "was in a position to control the assets of Produce for Less" (*id.* ¶ 3(b)), including "the PACA trust assets belonging to" Intervenors (*id.* ¶ 23).  Intervenors allege that "Gavrilov failed to direct [PFL] to fulfill its statutory duties to preserve PACA trust assets and pay Intervenor[s ] for the produce they supplied."  (*Id.* ¶ 24.)

On October 29, 2019, Avocavi sold 480 boxes of avocados "in interstate and foreign commerce" to PFL for $16,680.00.  (*Id.* ¶ 11; *id.* Ex. A.)  Payment for the avocados was due to Avocavi by November 20, 2019.  (*Id.*)  The invoice for this sale stated (in relevant part):

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

> Buyer acknowledges and agrees that, interest shall accrue on any past-due account balance at the rate of 1.5% per month (18% per annum), or at the maximum allowable rate under applicable law, until such time as full payment is received.  In the event any collection action or other legal proceeding becomes necessary to enforce any right under this agreement, Buyer agrees to pay all costs of collection or enforcement, including reasonable attorneys' fees.

("Avocavi Trust Notice," *id.*)

2

FR Fresh also sold avocados "in interstate and foreign commerce" to PFL. (Intervenor Compl. ¶ 11; *id.* Ex. A.) FR Fresh made three sales to PFL: invoice 01034, dated September 24, 209, is for $33,600.00 (*id.*); invoice 01057, dated October 16, 2019, is for $39,440.00 (*id.*); and  invoice 01075, dated November 30, 2019, is for $33,920.00. (*Id.*) Each of the invoices says, "TERMS: 21 DAYS." (*Id.*) The invoices also contain a PACA trust notice, the relevant part of which is identical to the Avocavi Trust Notice. ("FR Fresh Trust Notice," *id.*)

In May 2019,[1] NSB sold "perishable agricultural commodities" to PFL "in interstate and foreign commerce." (Intervenor Compl. ¶¶ 2, 11.) NSB sent PFL nine invoices for these sales. The invoices are included as part of Exhibit A to the Intervenor Complaint:

| Invoice Date | Invoice Number | Items | Quantity (units) | Total Price |
|---|---|---|---|---|
| May 2, 2019 | 506800 | "ArtiSun Farms TOV" | 3,354 | $15,093.00 |
| May 3, 2019 | 506101 | "Garden ripe" | 3,857 | $23,142.00 |
| May 8, 2019 | 506683 | Mini peppers<br>Yellow bell peppers<br>Grape tomato[2] | 1,500<br>268<br>266 | $18,742.00 |
| May 8, 2019 | 507074 | "ArtiSun Farms TOV" | 3,702 | $36,464.70 |
| May 8, 2019 | 507084 | Red bell peppers<br>Yellow bell peppers | 720<br>92 | $17,864.00 |
| May 15, 2019 | 507499 | Garden ripe grape | 3,857 | $23,142.00 |
| May 15, 2019 | 507591 | "Garden ripe"<br>"ArtiSun Farms TOV" | 1,330<br>2,244 | $19,408.00 |
| May 24, 2019 | 508300 | Garden ripe grape | 3,857 | $26,999.00 |
| May 25, 2019 | 508408 | Cherry tomatoes<br>Grape tomatoes<br>"Garden Ripe" | 1,596<br>1,064<br>1,330 | $36,176.00 |
| *Total* | | | | *$217,030.70* |

Thus, based on the invoices, NSB sold $217,030.70 worth of produce to PFL.[3]

---

[1] The chart Intervenors included as part of paragraph 11 to their Complaint states that NSB sold produce to PFL from May 3, 2019 until June 4, 2019. (Intervenor Compl. ¶ 11.) However, NSB's last invoice is dated May 25, 2019. (Intervenor Compl. Ex. A.)

[2] The invoice states "Grape Tom," which the undersigned assumes to be tomatoes.

[3] In their Complaint, Intervenors allege that Defendants owe NSB $215,730.50. (Intervenor Compl. ¶ 11.) The lower amount set forth in the Intervenor Complaint appears to be caused by invoice 50704. NSB's PACA trust chart states that the amount due for this invoice is $35,164.50 (Rogers Decl. Ex. 1), even though the total price

The NSB invoices all state:

> The perishable agricultural commodities listed on this invoice and/or confirmation are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 USC 499(e)(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. NOTICE: Past due invoices as well as any judgements [sic] arising from the collection of such invoices shall accrue annual interest at the rate of 18% or at the maximum legal rate, whichever is lower. Seller shall be entitled to collect reasonable attorney's fees and expenses as part of an action to collect on this invoice. Actual attorney's fees incurred in bringing any action to collect on this invoice and/or enforcing any judgment granted and interest shall be considered as additional sums owed in connection with this transaction.

("NSB Trust Notice," Intervenor Compl. Ex. A.)

Intervenors "sold the [p]roduce to Produce for Less and Produce for Less accepted the [p]roduce from" Intervenors. (Intervenor Compl. ¶ 12.) Nevertheless, "Defendants have failed to pay for the [p]roduce when payment was due, despite repeated demands." (*Id.* ¶ 13.) Defendants have not disputed the debt and have advised Intervenors that they are unable to pay Intervenors. (*Id.* ¶ 16.) "Defendants' failure, inability and refusal to pay [Intervenors], show that Defendants are failing to maintain sufficient assets in the statutory trust to pay Intervenor[s ] and are dissipating trust assets." (*Id.* ¶ 17.)

## **PROCEDURAL BACKGROUND**

Plaintiff Dave's Specialty Imports, Inc. filed a complaint against Defendants on December 20, 2019. (Dkt. 1.) On January 21, 2020, Avocavi, FR Fresh, and NSB filed their unopposed motion to intervene (Dkt. 17), which the Court granted on January 27, 2020 (Dkt. 19). The Intervenor Complaint was filed on January 28, 2020. (Dkt. 20.) Intervenors assert five causes of action in their Complaint: (1) failure to pay trust funds (*id.* ¶¶ 18-19); (2) failure to pay for goods sold (*id.* ¶¶ 20-21);

---

set forth in the invoice is $36,464.70 (Intervenor Compl. Ex. A). No reason is given for the discrepancy and, accordingly, the undersigned assumes that the number in the invoice is correct.

(3) unlawful dissipation of trust assets by a corporate officer (*id.* ¶¶ 22-26); (4) breach of contract (*id.* ¶¶ 27-35); and (5) interest and attorney's fees (*id.* ¶¶ 36-39).[4]

Gavrilov was served with the Intervenor Complaint and Summons on February 3, 2020, and proof of service was filed on February 11, 2020. (Dkt. 26.) PFL was served with the Intervenor Complaint and Summons on February 11, 2020, and proof of service was filed on February 25, 2020. (Dkt. 27.)

Intervenors requested certificates of default for both Defendants on March 9, 2020 (Dkt. 33), which were entered by the Clerk of Court on March 16, 2020 (Dkt. 34). They filed the Motion on April 2, 2020. (Dkt. 35.) In the Motion, Intervenors assert only one cause of action against Defendants: failure to maintain trust assets in violation of 7 U.S.C. § 499e(c). (Avocavi Produce LLC, FR Fresh Produce, LLC and NS Brands LTD., Br. in Supp. of Mot. for Default J., "Mem.," Dkt. 36 at 3.)

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process regarding default judgment. First, the Clerk of the Court enters a party's default when a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Guideone Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Before a court grants a motion for default judgment, the court may, but is not required to, adjudicate personal jurisdiction. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (leaving "open the question whether a district court *must* investigate its personal

---

[4] Intervenors assert the third cause of action against Gavrilov and fourth cause of action against PFL only. The other three causes of action are asserted against both Defendants.

jurisdiction over a defendant before entering a default judgment" (quotation, citation, and alteration omitted))); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").

Additionally, the Court must ensure that (1) the plaintiff took all the required procedural steps in moving for default judgment pursuant to Local Civil Rule 55.2(c), and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the court draws all reasonable inferences in favor of the plaintiff. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, a default is "not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. Instead, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See id*; *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

## ANALYSIS

### I.   Procedural Compliance

To establish entitlement to default judgment, a plaintiff must demonstrate proper service of the summons and complaint. *Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 9-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Intervenors served Gavrilov by leaving a copy of the summons and Intervenor Complaint with a personal of suitable age and discretion at Gavirlov's residence and then mailing another copy to the same address. (Dkt. 26.) This is proper service. *See* Fed. R. Civ. P. 4(e)(1); N.Y.C.P.L.R. § 308(2). Intervenors served PFL by serving a copy of the

6

summons and Intervenor Complaint on the N.Y. Secretary of State.  (Dkt. 27.)  This is also proper service.  *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A); N.Y.C.P.L.R. § 311(1); N.Y. Bus. Corp. § 306(b)(1).

As part of their Motion, Intervenors included a memorandum of law (Dkt. 36; Local Civ. R. 7.1(a)(2)), a copy of the Clerk's Certificate of Default for Defendants (Dkt. 40; Local Civ. R. 55.2(b)(1)), a proposed judgment (Dkt. 35-1; Local Civ. R. 55.2(b)(3)), a notice of motion (Dkt. 35; Local Civ. R. 7.1(a)(1)), a copy of the claim (Dkt. 40; Local Civ. R. 55.2(b)(2)), proof of mailing the Motion to Defendants (Mem. at 9; Local Civ. R. 55.2(c)), and proof that Gavrilov is not on active military duty (Dkt. 40; Local Civ. R. 55.1(b)(1)).

The Local Civil Rules require a party seeking a default judgment also to include a copy of proof of service of the claim with the default judgment motion.  (*See* Local Civ. R. 55.1(b)(3).)  Plaintiff did not include this document.  However, the undersigned excuses Intervenors' failure to comply with this requirement because they filed proof of service of their Complaint on February 11 and February 25, 2020.  (Dkts. 26, 27.)  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Accordingly, Intervenors have complied with the procedural requirements for default judgment.

## II.    Subject Matter Jurisdiction

Jurisdiction over Intervenors' PACA claim is proper pursuant to 28 U.S.C. § 1331.

## III.    Liability

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce."  *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir. 2004).  In 1984, Congress added § 499e(c) to help protect the sellers of perishable agricultural commodities.  *Id.* at 37. Congress found that these "sellers needed greater protection" because they "were typically required

to sell their produce quickly and frequently found themselves in the position of unsecured creditors of buyers whose creditworthiness could not be verified." *Id.* "If buyers defaulted, sellers could look only to the commodities (which would have perished) or to the sales proceeds of the commodities." *Id.* However, the sellers "were often unable to collect monies owed to them" because they were "typically unsecured creditors" who lacked priority against secured credits such as banks. *Id.*

Congress designed § 499e(c) to address this problem by "requir[ing] licensed dealers to hold all perishable commodities on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers." *Id.* In so doing, Congress made "the sellers' interests in the commodities and sales proceeds superior to those of the buyers' [other] creditors." *Id.*

In relevant part, § 499e(c)(2) states:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

Congress also created a private right of action pursuant to which a trust beneficiary could enforce payments from a trust. *See id.* § 499e(c)(5). "To recover the proceeds from a PACA created trust, a plaintiff must demonstrate: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law." *A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C. § 499e).

8

The undersigned first considers whether Intervenors satisfied each of these five elements against PFL and then turns to whether Gavrilov is also liable for PFL's violation of § 499e(c).

### A.    *Whether PFL is Liable*

#### 1.    **Intervenors Sold PFL Perishable Agricultural Commodities**

PACA defines a "perishable agricultural commodity" as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A).  Most of the items Intervenors sold are avocados, peppers, and tomatoes.  (Intervenor Compl. Ex. A.)  It is evident that these are "perishable agricultural commodities," which satisfy the first element of a PACA trust claim.  *See Henry Avocado Corp. v. Z.J.D. Brother*, LLC, No. 17-CV-4559 (ARR), 2017 WL 6501864, at *4 (E.D.N.Y. Dec. 19, 2017) (finding that avocados are "'perishable agricultural commodities' given that they are fresh fruits or vegetables" (citing 7 U.S.C. § 499a(b)(4))).

Although it is not clear from NSB's invoices what certain other items sold to PFL are—for example, invoice 506800 is for "ArtiSun Farms TOV" and invoice 506101 is for "Garden ripe"—Intervenors' uncontested allegations establish that these sales were of "perishable agricultural commodities."  (Intervenor Compl. ¶¶ 2, 11.)

Accordingly, the undersigned finds that the first element is met as to all Intervenors.

#### 2.    **PFL Was a Commission Merchant, Dealer, or Broker**

Under the second element of a PACA trust claim, the plaintiff must establish that the defendant is a commission merchant, dealer, or broker.  *See A & J Produce Corp.*, 385 F. Supp. 2d at 358.  Here, Intervenors allege that PFL is a dealer because it "was engaged, director or indirectly, in the business of purchasing and/or selling [p]roduce in wholesale or jobbing quantities."  (Intervenor Compl. ¶ 4.)  They also allege that PFL is a commission merchant because it "was engaged in the business, directly or indirectly, of receiving in interstate or foreign commerce [p]roduce for sale on commission, or for or on behalf of another," including Intervenors.  (*Id.* ¶ 5.)

PACA defines a "commission merchant" as "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5). It defines a "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agriculture], any perishable agricultural commodity in interstate or foreign commerce." *Id.* § 499a(b)(6).

These allegations are sufficient to establish the second element of a § 499e(c)(2) claim. *See Mikey's Choice LLC v. Fagos LLC*, No. 8-CV-4492 (RRM)(SMG), 2010 WL 935550, at *1 (E.D.N.Y. Feb. 19, 2010), *R&R adopted*, 2010 WL 934260 (E.D.N.Y. Mar. 12, 2010) (finding that plaintiff's allegations that defendant was a PACA dealer was sufficient on a default judgment motion).[5]

### 3. The Transactions Occurred in Interstate Commerce

Under PACA, the term "interstate commerce" is defined as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(b)(3).

Intervenors allege that they "sold to Produce for Less in interstate and foreign commerce, and Produce for Less purchased from Intervenors," perishable agricultural commodities. (Intervenors' Compl. ¶ 11.) This satisfies the third element of a § 499e(c)(2) claim. *See Mikey's Choice LLC*, 2010 WL 935550, at *1.

### 4. Intervenors Have Not Received Full Payment

---

[5] The fact that PFL's PACA license was terminated (Aff. of Craig A. Stokes in Supp. of Avocavi Produce, LLC, FR Fresh Produce, LLC and NS Brands Ltd., Mot. for Default J., "Stokes Aff.," Dkt. 40 ¶ 4; *id.* Ex. 3), does not alter this conclusion. *See Mikey's Choice LLC*, 2010 WL 935550, at *1-2 (finding corporate defendant liable even though "plaintiff has not submitted any evidence [of] the PACA license"); *see also JC Produce, Inc. v. Paragon Steakhouse Rests., Inc.*, 70 F. Supp. 2d 1119, 1122 n.7 (E.D. Cal. 1999) ("Courts have generally held that PACA trust beneficiaries can enforce PACA trusts against any person, whether or not subject to PACA's licensure requirements." (collecting cases)).

Intervenors allege that "Defendants have failed to pay for the Produce when payment was due, despite repeated demands." (Intervenor Compl. ¶ 13; *see also* Decl. Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 of Eduardo Capiz Mendez in Supp of Intervenor Avocavi Produce, LLC, Mot. for Default J., "Mendez Decl.," Dkt. 37 ¶ 5; Decl. Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 of Zulema Rodriguez Alvarez in Supp. of Intervenor FR Fresh Produce LLC, Mot. for Default J., "Alvarez Decl.," Dkt. 38 ¶ 5; Rogers Decl. ¶ 5.) Accordingly, this element is satisfied. *See Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 269 (E.D.N.Y. 2019) (finding that analogous allegations satisfied the fourth element of a § 499e(c)(2) claim).

### 5.    <u>Intervenors Gave Written Notice of Intent to Preserve Trust Rights</u>

PACA provides two ways in which a seller may preserve its trust rights: (1) the seller provides written notice to the dealer within thirty days after payment is due, *see* 7 U.S.C. § 499e(c)(3); or (2) the seller includes a printed statement on its billing or invoice statements, *id.* § 499e(c)(4).

The Avocavi Trust Notice, FR Fresh Trust Notice, and NSB Trust Notice include language preserving Intervenors' trust rights. Intervenors included their respective Notice on each invoice sent to PFL. (Intervenor Compl. Ex. A.) This is sufficient to preserve Intervenors' rights under § 499e(c)(4). *See Double Green Produce, Inc.*, 387 F. Supp. 3d at 270 (finding that a substantially similar statement satisfied § 499e(c)(4)).

*     *     *

Accordingly, the undersigned respectfully recommends finding that Intervenors satisfied the elements required to establish PFL's liability on Intervenors' PACA trust claim.

### B.    *Whether Gavrilov is Liable*

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007).

Intervenors allege that as PFL's "owner and Principal," Gavrilov "controlled" its "assets," including "the PACA trust assets belonging to" Intervenors.  (Intervenor Compl. ¶¶ 3(b), 23.)  They also allege that he "failed to direct [PFL] to fulfill its statutory duties to preserve PACA trust assets and pay Intervenor[s ] for the produce they supplied."  (*Id.* ¶ 24.)

The undersigned respectfully recommends that Gavrilov also be held liable under PACA because he was the "individual who was in a position to control trust assets and allow[ ] the assets to dissipate."  *S. Katzman Produce, Inc. v. Won*, No. 8-CV-2403 (KAM)(VVP), 2009 WL 2448408, at *4 (E.D.N.Y. Aug. 7, 2009) (citation and quotation omitted).

## IV.    Damages

Intervenors seek $339,370.50 in damages.  (Dkt. 35-1 at 2.)  They also seek prejudgment interest of $24,822.54.  (*Id.* at 5.)

### A.    *Unpaid Invoices*

#### 1.    <u>Avocavi</u>

As part of the Motion, Intervenors include the Declaration of Eduardo Capiz Mendez, who is a sales manager at Avocavi.  (Mendez Decl. ¶ 1.)  He states that Avocavi sold the avocados to PFL on October 29, 2019 for $16,680.00, that "[t]here is no dispute as to whether the avocados were received and accepted by PFL," and that PFL has not paid for the avocados "despite due demand." (*Id.* ¶ 2; *see also id.* ¶ 5 ("To date, a balance in the amount of $16,680.00 remains unpaid and due to Avocavi.").)  Mendez also attached "[a] true copy" of the open invoice to his Declaration (*Id.* ¶ 3.) This invoice matches the one included with Exhibit A of the Intervenor Complaint.  (*Compare id.* Ex. 1 *with* Intervenor Compl. Ex. A.)

Accordingly, the undersigned respectfully recommends that Avocavi be awarded $16,680.00 in damages.

2.    **FR Fresh**

As part of the Motion, Intervenors include the Declaration of Zulema Rodriquez Alvarez, who is a manager at FR Fresh.  (Alvarez Decl. ¶ 1.)  Alvarez "monitor[s] [FR Fresh's] sale of perishable agricultural commodities, including those sales that are the subject of this action."  (*Id.* ¶ 2.)  She is also responsible for "supervising collection of the account receivable for such sales, including [PFL's] account."  (*Id.*)

She states that "[t]here is no dispute" that FR Fresh sold, and PFL "received and accepted" "three loads of avocados . . . , totaling $106,960.00, all of which remains unpaid despite due demand." (*Id.* ¶ 3.)  Alvarez also attached "[t]rue copies" of invoices 01034, 01057, and 01075 to her Declaration. (*Id.* ¶ 1.)[6]  These invoices match the ones included with Exhibit A of the Intervenor Complaint. (*Compare id.* Ex. 1 *with* Intervenor Compl. Ex. A.)

Accordingly, the undersigned respectfully recommends that FR Fresh be awarded $106,960.00 in damages.

3.    **NSB**

As part of the Motion, Intervenors include the Declaration of Elaine Rogers, who is NSB's assistant controller.  (Rogers Decl. ¶ 1.)  She states that in May 2019, NSB "sold, on credit, nine (9) loads of perishable agricultural commodities" to PFL "for an agreed price as indicated on the open invoices totaling $215,730.50, all of which remains unpaid despite due demand."  (*Id* ¶ 2.)

Rogers also states that "[t]rue copies of the invoices" for the nine sales are attached to her Declaration.  (*Id.* ¶ 3.)  Two of the invoices Intervenors included with their Complaint—invoice numbers 507591 and 508300—are not attached to the Rogers Declaration.  (*Compare* Intervenor Compl. Ex. A *with* Rogers Decl. Ex. 1.)  These two invoices are, however, included in the PACA trust

---

[6] The Alvarez Declaration contains two paragraphs bearing the number 1.  (*See* Dkt. 38.)

chart, which is also attached to the Rogers Declaration. (Rogers Decl. Ex. 1.) Thus, the undersigned finds that NSB is entitled to damages for all nine of the unpaid invoices.

The undersigned also finds that the nine invoices total $217,030.70, because the amount due for invoice 507074 is $36,464.70, not $35,164.50, as set forth on the PACA chart. (*See* Intervenor Compl. Ex. A; Rogers Decl. Ex. 1.) Accordingly, the undersigned respectfully recommends that NSB be awarded $217,030.70.

### B.    Interest

Although "PACA does not itself establish a right to interest," "the purchaser is required to pay [interest] when the parties' contract so provides." *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 4-CV-3125 (WHP), 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005). Courts have the discretion to award prejudgment interest on a PACA claim. *See Frankie Boy Produce Corp. v. Sun Pac. Enters.*, No. 99-CV-10158 (DLC), 2000 WL 1532914, at *3 (S.D.N.Y. Oct 17, 2000).

### 1.    Avocavi

Avocavi requests prejudgment interest in the amount of 18% per year from the date the invoice became due. (Mendez Decl. ¶ 3.)

The Avocavi Trust Notice states (in relevant part): "Buyer acknowledges and agrees that, interest shall accrue on any past-due balance at the rate of 1.5% per month (18% per annum), or at the maximum allowable rate under applicable law, until such time as full payment is received." Thus, the undersigned finds that the prejudgment interest rate for Avocavi is 1.5% per month or 18% per year. *See G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc.*, No. 15-CV-6174 (NG)(CLP), 2016 WL 5802747, at *8 (E.D.N.Y. Aug. 12, 2016), *R&R adopted*, 2016 WL 5716819 (E.D.N.Y. Sept. 30, 2016) (finding that the applicable interest rate was 1.5% because it was the amount in the PACA notice included with seller's invoice and it was reasonable).

Avocavi's PACA trust chart states that PFL's "Payment Due Date" was November 8, 2019. (Mendez Decl. Ex. 1.)  However, the invoice Avocavi sent to PFL states that the "due date" was November 20, 2019.  (*Id.*)  Thus, the undersigned finds that interest should be calculated from November 21, 2019.

The prejudgment interest is calculated in the table below:

| Invoice Number | Payment Due Date | Amount Due | Date Interest Runs From | Interest Rate Per Year | Interest Per Year | Interest Per Day |
|---|---|---|---|---|---|---|
| 101318 | November 20, 2019 | $16,680.00 | November 21, 2019 | 18% | $3,002.40 | $8.23 |

Accordingly, the undersigned respectfully recommends that Avocavi be awarded $8.23 in interest per day from November 21, 2019 until the date of judgment.

**2.    FR Fresh**

FR Fresh requests prejudgment interest in the amount of 18% per year from the date the invoice became due.  (Alvarez Decl. ¶ 1.)

The FR Fresh Trust Notice states (in relevant part): "Buyer acknowledges and agrees that, interest shall accrue on any past-due account balance at the rate of 1.5% per month (18% per annum), or at the maximum allowable rate under applicable law, until such time as full payment is received."  Thus, the undersigned finds that the prejudgment interest rate for FR Fresh is 1.5% per month or 18% per year.  *See G & P Warehouse*, 2016 WL 5802747, at *8.

In its PACA trust chart, FR Fresh states that payment for each of the three invoices it sent to Defendants was due within ten days of the invoice date.  (Alvarez Decl. Ex. 1.)  However, FR Fresh provides no support for this contention.  Moreover, the three invoices all state that "terms" are "21 days."  (*Id.*)  Accordingly, the undersigned finds that prejudgment interest runs from 22 days after the date of the invoice.

The prejudgment interest is calculated in the table below:

| Invoice Number | Payment Due Date | Amount Due | Date Interest Runs From | Interest Rate Per Year | Interest Per Year | Interest Per Day |
|---|---|---|---|---|---|---|
| 01034 | October 15, 2019 | $33,600.00 | October 16, 2019 | 18% | $6,048.00 | $16.57 |
| 01057 | November 6, 2019 | $39,440.00 | November 7, 2019 | 18% | $7,099.20 | $19.45 |
| 01075 | December 21, 2019 | $33,920.00 | December 22, 2019 | 18% | $6,105.60 | $16.73 |

Accordingly, the undersigned respectfully recommends that FR Fresh be awarded (1) $16.57 in prejudgment interest from October 16, 2019 until the date of judgment, (2) $19.45 in prejudgment interest from November 7, 2019 until the date of judgment, and (3) $16.73 in prejudgment interest from December 22, 2019 until the date of judgment.

3.    **NSB**

The NSB Trust Notice states that "[p]ast due invoices as well as any judgements [sic] arising from the collection of such invoices shall accrue annual interest at the rate of 18% or at the maximum legal rate, whichever is lower." (Intervenors' Compl. Ex. A.) Relying on New York law, NSB requests prejudgment interest "at the rate of nine percent (9%) *per annum* from January 28, 2020, the date this cause of action was filed until entry of judgment." (Rogers Decl. ¶ 3; *id.* ¶ 3 n.1 (citing N.Y. C.P.L.R. § 5001(a)).) Based on this request, the undersigned finds that the appropriate interest rate is 9% per year measured from January 28, 2020 and calculates the prejudgment interest as follows:

| Amount Owed | Date Interest Runs From | Interest Rate Per Year | Interest Per Year | Interest Per Day |
|---|---|---|---|---|
| $217,030.70 | January 28, 2020 | 9% | $19,532.76 | $53.51 |

Accordingly, the undersigned respectfully recommends that NSB be awarded $53.51 in prejudgment interest from January 28, 2020 until the date of judgment.

**V.    Attorneys' Fees and Costs**

A seller is entitled to attorneys' fees and costs in an action to enforce a PACA trust "when the parties' contract so provides." *G & P Warehouse*, 2016 WL 5802747, at *7 (quotation and citation

omitted). "In the PACA context, courts have understood standard-form provisions contained in invoices to constitute additional terms of the purchase agreement between the parties . . . ." *Tomato Mgmt., Corp. v. CM Produce LLC*, No. 14-CV3522 (JPO), 2014 WL 2893368, at *2 (S.D.N.Y. June 26, 2014) (citation omitted).

The Avocavi and FR Fresh Trust Notices state, in relevant part:

> In the event any collection action or other legal proceeding becomes necessary to enforce any right under this agreement, Buyer agrees to pay all costs of collection or enforcement, including reasonable attorneys' fees.

(Intervenor Compl. Ex. A.)

The NSB Trust Notice states, in relevant part:

> Seller shall be entitled to collect reasonable attorney's fees and expenses as part of an action to collect on this invoice. Actual attorney's fees incurred in bringing any action to collect on this invoice and/or enforcing any judgment granted and interest shall be considered as additional sums owed in connection with this transaction.

(*Id.*)

Based on these express contractual provisions, Intervenors are entitled to reasonable attorneys' fees and costs.

The exact amount of attorneys' fees and costs sought by Intervenors is unclear. In paragraph 6 of his Affidavit, Stokes states that Intervenors seek "$5,062.30 in fees and $189.71 in service of process fees." (*See also* Mem. at 8 ("Accordingly, Intervenors are entitled to . . . attorney fees of $5,062.30 and costs of $189.71.").) However, in his Affidavit, Stokes states that "Intervenors are owed $4,530.00 in attorneys' fees and costs." (Stokes Aff. ¶ 10.)[7]

## A. *Attorneys' Fees*

"The court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award." *Zuffa, LLC v. S. Beach Saloon, Inc.*, No. 15-CV-6355 (ADS)(AKT), 2019 WL 1322620, at

---

[7] The tenth paragraph in the Stokes Affidavit incorrectly bears the number 8, which the undersigned presumes to be a scrivener's error. (*See* Dkt. 40.)

*6 (E.D.N.Y. Mar. 6, 2019), *R&R adopted*, 2019 WL 1317568 (E.D.N.Y. Mar. 22, 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). "Requests for attorney's fees must be accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Innovative Sports Mktg., Inc. v. Aquarius Fuente de Soda, Inc.*, No. 7-CV-2561 (ENV)(CLP), 2009 WL 3173968, at *11 (E.D.N.Y. Sept. 30, 2009) (quotation and citation omitted).

### 1.  **Reasonable Hourly Rate**

A reasonable hourly rate is determined through the application of the forum rule, which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). The burden is on the fee applicant to establish the reasonableness of the hourly rate sought. *See Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *5 (E.D.N.Y. Apr. 2, 2020).

"The prevailing rates for attorneys in the E.D.N.Y. are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Id.* (quotations, citations, and alterations omitted). Courts in this district typically award hourly fees ranging from "$70 to $100 for paralegals." *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020).

According to the time sheets submitted by Intervenors, they seek fees for Rosa M. Barrera, Gabriela M. Barrera, and David Jones. The proposed hourly rates for these individuals are $145, $75,

18

and $275, respectively. (Stokes Aff. Ex. 7.) Intervenors only provide the following information about

the attorneys who worked on this matter:

> Stokes Law specializes in agricultural law, including civil litigation involving [PACA]. The firm represents producer and distributors of fresh fruits and vegetables located in the US and throughout Latin America and the Caribbean. Mr. Stokes', the firm's partner, hourly billing rate is $395.00 per hour. Associate attorney's hourly rate on this matter was $275.00. Paralegal work is billed at $145 per hour. These rates are reasonable based on our experience, skill and reputation and said rates are the prevailing rate for other attorneys of comparable skill and experience for similar PACA-related matters.[8]

(Stokes Aff. ¶ 9.)

The information provided is insufficient to satisfy the Intervenors' burden. Intervenors fail

to provide any information regarding whether the individuals are associates or partners, the number

of years each attorney has worked or their level of experience. Thus, the undersigned finds that the

proper hourly rate should be at the bottom of the range for each individual, *i.e.*, $70 for Rosa M.

Barrera and $100 for Jones. *See Chawla v. Metro. Oral Surgery Assocs., P.C.*, No. 11-CV-6248

(RRM)(VMS), 2014 WL 4678023, at * 11 (E.D.N.Y. Sept. 19, 2014) (setting the hourly rate of a biller

"at the bottom end of the range" when the fee applicant provided no "background-and-experience

information").

Because Intervenors provide even less information about Gabriela M. Barrera, the

undersigned does not know her role or title at Stokes's firm. The work she performed appears to be

appropriate for a paralegal. Therefore, her reasonable hourly rate will be $70.

## 2.    Reasonableness of Time Billed

In addition to evaluating the reasonableness of the hourly rate sought, the court must also

consider whether the "number of hours for which compensation is sought is reasonable." *Monge*,

2020 WL 1666460, at *7 (quotation and citation omitted). The fee applicant bears the burden to show

---

[8] Based on the timesheets Intervenors submitted, it does not appear that they are seeking fees for any work Stokes may have performed on this matter.

that the hours spent are not "excessive, redundant, or otherwise unnecessary." *Id.* (quotation and citation omitted). If a fee application has "such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation and citation omitted).

Many of the billing entries are redacted, rendering them vague and, thus, difficult to review. (*See* Stokes Aff. Ex. 7, Dec. 26, 2019, Jan. 16, 2020, Jan. 17, 2020, Jan. 21, 2020, Jan. 27, 2020, Apr. 1, 2020 entries.) Nevertheless, the undersigned finds that the overall number of hours for which Intervenors seek fees was reasonable, especially in light of the fact that much of the work was performed by paralegals.

### 3. Calculating the Fee Award

The chart below sets forth the fees for Intervenors' attorney and paralegals calculated using the reasonable hourly rates without any reduction in hours.

| Biller | Requested Rate | Adjusted Rate | Hours | Adjusted Rate *x* Hours |
|---|---|---|---|---|
| David Jones | $275 | $100 | 0.6 | $60.00 |
| Rosa M. Barrera | $145 | $70 | 30.19 | $2,113.30 |
| Gabriela M. Barrera | $75 | $70 | 6.93 | $485.10 |
| *Total* | | | | *$2,658.40* |

Accordingly, the undersigned respectfully recommends that Intervenors be awarded $2,658.40 in attorneys' fees.

### B. Costs

Intervenors seek "$189.71 in service of process fees." (Stokes Aff. ¶ 6 at 3.)[9] However, Intervenors have not provided any documentation to support this request. Exhibit 7, which purports

---

[9] The Stokes Affidavit contains a paragraph 6 on page 2, as well as a paragraph 6 on page 3.

to provide support for the fees and costs contains only billing records in support of the fees; no invoices or other records are provided to support the service of process amounts requested. Accordingly, the undersigned respectfully recommends denying the request. *See Lee v. Santiago*, No. 12-CV-2558 (PAE)(DF), 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation.").

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be granted, and that damages and prejudgment interest be awarded as follows:

- Avocavi

  - Damages: $16,680.00

  - Prejudgment interest: $8.23 per day from November 21, 2019 until the date of judgment

- FR Fresh

  - Damages: $106,960.00

  - Prejudgment interest

    - $16.57 per day from October 16, 2019 until the date of judgment

    - $19.45 per day from November 7, 2019 until the date of judgment

    - $16.73 per day from December 22, 2019 until the date of judgment

- NSB

  - Damages: $217,030.70

  - Prejudgment interest: $53.51 per day from January 28, 2020 until the date of judgment

The undersigned also respectfully recommends that Intervenors be granted $2,658.40 in attorneys' fees.

The undersigned respectfully recommends that the Motion be denied in so far as it seeks an award of costs.

Intervenors are directed to serve a copy of this Report and Recommendation on Defendants and file proof of service no later than March 15, 2021. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 12, 2021